UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| **MARIT, LLC f/k/a ECOCO, INC,** <br><br> Plaintiff, <br><br> – against – <br><br> **WILLIAM BOKOR,** <br><br> Defendant. | 1:23-civ-15912 <br><br> Hon. Joan B. Gottschall |

**PLAINTIFF'S OPPOSITION TO DEFENDANT WILLIAM BOKOR'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 8(a), 9, 12(b)(1), AND 12(b)(6)**

## Table of Contents

STATEMENT OF FACTS ............................................................................................................... 1
LEGAL STANDARD..................................................................................................................... 5
LEGAL ARGUMENT.................................................................................................................... 6
   1.   Count I (Replevin) and Count II (Conversion) .................................................................. 6
   2.   Count III (Breach of Fiduciary Duty) ................................................................................ 9
   3.   Count IV (Fraudulent Inducement)................................................................................... 13
   4.   Count V (Violation of Illinois Trade Secrets Act)............................................................ 14
CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*3Com Corp. v. Elecs. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 938–39 (N.D. Ill. 2000) 14
*Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 897 (N.D. Ill. 2019) .................. 14
*Advantage Mktg. Grp., Inc. v. Keane*, 143 N.E.3d 139, 147 (Ill. App. Ct. 2019) ........................ 10
*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ................................................................................. 5
*Barrelett v. Bellgard*, 71 Ill. 280 (1874) ...................................................................................... 7
*Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) ....................................................... 9
*Bower v. Jones,* 978 F.2d 1004, 1011 (7th Cir.1992) ................................................................. 14
*Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502, DuPage Cnty., Illinois,* No. 15-CV-09323, 2020 WL 11138332, at *2 (N.D. Ill. Nov. 30, 2020) ................................................. 8
*Brian J. Wanca, J.D., P.C. v. Oppenheim*, 2023 IL App (1st) 220273, ¶ 43 ............................... 13
*Christopher Glass & Aluminum, Inc. v. O'Keefe*, No. 1:16-CV-11532, 2017 WL 2834536, at *4 (N.D. Ill. June 30, 2017) ........................................................................................................ 13
*Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) .... 11
*FDIC for Seaway Bank & Tr. Co. v. Urban P'ship Bank*, No. 17-cv-01517, 2018 WL 497285, at *6 (N.D. Ill. Jan. 22, 2018) ................................................................................................... 6
*First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 837–38 (C.D. Ill. 2014) ...................... 12
*First Illini Bank v. Wittek Indus., Inc.*, 261 Ill.App.3d 969, 970 (Ill. App. Ct. 1994) ................... 7
*Gates v. Towery*, 456 F. Supp. 2d 953, 968 (N.D. Ill. 2006) ....................................................... 9
*Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005) ........................................... 13
*Illinois Educ. Ass'n v. Illinois Fed'n of Tchrs.*, 107 Ill. App. 3d 686 (4th Dist. 1982) ................. 7
*McLaughlin v. Chi. Transit Auth.*, 243 F. Supp. 2d 778, 779 (N.D. Ill. 2003) ....................... 9, 10
*MiMedx Grp., Inc. v. Fox,* No. 16 CV 11715, 2017 WL 3278913, at *6, *15 (N.D. Ill. Aug. 2, 2017) ........................................................................................................................................ 8
*Moss v. HealthCare Compare Corp.*, 75 F.3d 276, 279 (7th Cir. 1996) ...................................... 5
*Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995) ................................................................... 5
*Nepomonceno v. Knights of Columbus,* 1999 WL 66570, at *13 (N.D.Ill. Feb.8, 1999) ............ 14
*Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015) ......................................... 9
*Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F.Supp.2d 759, 768 (N.D. Ill. 2011) ...................................................................................................................................... 14
*PrimeSource Bldg. Prod., Inc. v. Felten*, No. 16 CV 11468, 2017 WL 11500971, at *8 (N.D. Ill. July 6, 2017) .......................................................................................................................... 12
*re Settlers' Housing Serv., Inc.*, 514 B.R. 258, 285 (N.D. Ill. 2014) ............................................ 9
*Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999) .......................................................... 12
*Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 780-81 (N.D. Ill. 2017) ............................. 8
*Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ........................................................... 6
*Taylor, Bean & Whitaker Mortg. Corp. v. Vincent Cebulak*, No. 03-C-7425, 2004 WL 2106605, at *6 (N.D. Ill. Sept. 20, 2004) ............................................................................................... 5
*Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ................................................................... 6
*United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007) .................................. 12
*United States v. Zolin,* 491 U.S. 554, 563 (1989) ...................................................................... 12
*Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) ................ 6
*Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1059 (Ill. App. Ct. 1993) ........................................ 10
*Vendavo, Inc. v. Kim Long*, 397 F. Supp. 3d 1115, 1136 (N.D. Ill. 2019) ................................. 15

*Walgreens Co. v. Peters*, No. 21 C 2522, 2021 WL 3187726, at *2 (N.D. Ill. July 28, 2021) ...... 7
*Walgreens Co. v. Peters*, No. 21 C 2522, 2021 WL 4502125, at *3 (N.D. Ill. Oct. 1, 2021) ...... 13

**Statutes**

735 ILCS 5/19–104 .............................................................................................................. 7
735 ILCS 5/19-125 .............................................................................................................. 8
740 ILCS 14/1 ..................................................................................................................... 7
765 ILCS § 1065/2(d) ........................................................................................................ 15

Plaintiff MARIT, LLC f/k/a ECOCO, INC. ("Marit" or "Plaintiff"), by and through its counsel, Moskowitz Colson Ginsberg & Schulman, LLP and Katten & Temple LLP, in opposition to the Motion to Dismiss filed by Defendant WILLIAM BOKOR ("Bokor" or "Defendant"), alleges as follows:

**STATEMENT OF FACTS**

This action is brought in response to the lengthy and concerted actions by Bokor, the former financial controller and member of the control group of Marit (including Ecoco, Inc. ("Ecoco")) (hereinafter, "Ecoco/Marit"), undermining Plaintiff's business activities while abrogating his responsibilities to oversee and administer the most crucial aspects of the business. Bokor stole and misappropriated physical property, funds, data and information belonging to Ecoco/Marit, and shared and otherwise transferred at least some of Ecoco/Marit's confidential information to his relative, current counsel and attorney of record in the instant lawsuit and in a pending lawsuit brought against Ecoco/Marit, a lawsuit in which Bokor is now also a party, for alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. That lawsuit, ironically, focuses on employee time clocks that Bokor was responsible for obtaining and administering.

Ecoco, formed in or about 1992, Complaint ¶ 9, was in the business of manufacturing, distributing and selling beauty and hair care products, *Id* ¶ 3. On or about September 4, 2020, Ecoco and its three Subsidiaries entered into an Asset Purchase Agreement (the "APA") with EStyle Corp, LLC ("EStyle"), a Florida limited liability company. *Id* ¶ 11. Pursuant to the APA, EStyle purchased from Ecoco and its Subsidiaries virtually all of the assets that Ecoco and its Subsidiaries used to run their businesses.[1] *Id* ¶ 12.

---

[1] On September 5, 2020, Ecoco, Inc. was converted to an Illinois limited liability company and changed its name to Marit, LLC. Complaint ¶ 12.

From November 2016 until on or about September 5, 2020, Bokor was the financial controller of Ecoco. Complaint ¶ 14. When EStyle purchased the assets of Ecoco and its Subsidiaries, EStyle decided it did not wish to retain Bokor to perform any role at EStyle. *Id* ¶ 15. When informed of this, Bokor essentially stated to Ecoco's owner, Aaron Tiram, that he had been a loyal and productive employee, that he was disappointed that EStyle would not employ him, and that he would continue to be a loyal and productive employee if offered a position with Marit, the only business existing post-sale and created to perform administrative services for EStyle. *Id* ¶ 16. Bokor would essentially be its only employee. *Id* ¶ 16. Because Bokor was believed to have been a loyal employee, and in reliance on Bokor's representations, including his pledge of loyalty, Bokor was offered the opportunity to continue his position of financial controller, now at Marit rather than Ecoco. *Id* ¶ 17. Bokor accepted the position and remained the Marit financial controller from September 5, 2020, through on or about August 16, 2022. *Id* ¶ 17, 18.

As the Controller for Ecoco (and subsequently for Marit), Bokor was a control group member and had unfettered access to the Company's offices, documents, files, and unsupervised control over much of the Company's product and resources. Complaint ¶ 23. As to financial issues, Bokor had signatory authority and even signed his own payroll checks. *Id* ¶ 24. Bokor made decisions about the Company's payroll processes and was relied upon for opinions and advice regarding various matters pertaining to the pivotal operation of the business. *Id* ¶ 24. He was also involved in the handling of legal issues involving Ecoco/Marit and was often involved in discussions with legal counsel including with respect to the sale of Ecoco's assets and its Subsidiaries to EStyle. *Id* ¶ 24.

During his employment, Bokor had full access to the bank accounts of Ecoco/Marit and was identified as an authorized agent for Marit's bank account. Complaint ¶ 29. As Ecoco/Marit's

2

financial controller, Bokor had unfettered access to the Company's offices, documents and files, including the personnel files of former Ecoco employees and documents relevant to the BIPA litigation. *Id* ¶ 38.

As the only employee regularly at the Ecoco facility in Chicago in the months leading to the end of his employment with Marit, Bokor had sole and exclusive access to all the files and records of Ecoco/Marit, and was responsible for maintaining the records of Ecoco/Marit. Complaint ¶ 33.

During this period, Bokor stole and converted items, electronic data and Company files belonging to Marit and its majority owner, Aaron Tiram. Complaint ¶ 67. For example, in approximately 2020 and/or 2021, Bokor took without authorization certain products Ecoco/Marit manufactured and owned, including pallets of hand sanitizer, and transferred such products, without authorization or notice to Marit, to entities his lawyer (or a relative of his lawyer's) owned or controlled for resale to, among others, nursing homes in Illinois. *Id* ¶ 68.

As another example, during approximately the same period when Bokor was stealing Ecoco/Marit's products for resale to third parties, Bokor processed double-payment of wages and compensation for himself without authorization or notice. Complaint ¶ 69.

Also during his employment, Bokor took proprietary, privileged and confidential documents relating to Ecoco/Marit without authorization or permission. Complaint ¶ 45. Not only was this done during his employment but, on September 13, 2022, Bokor accessed 133 documents on his Company-owned computer that he had improperly retained after his employment with Marit ended, including documents pertaining to the timekeeping systems at issue in the BIPA litigation, human resources files, confidential information about Marit's former employees, financial records, legal documents, and a privileged draft of the purchase and sale agreement between Ecoco/Marit

and EStyle which contained Ecoco's outside counsel's comments and proposed changes. *Id* ¶ 47. Bokor also accessed an additional 61 documents on the Marit computer on September 15, 2022, including Marit's bank statements, payroll records, check registers, documents relating to the timekeeping system, W-2s, and various legal, financial and real estate documents. *Id* ¶ 48.

Plaintiff did not know, and Bokor did not disclose, that he and his attorney (and the founding member of his firm) are related by marriage and share grandchildren, Complaint ¶ 49, and at all relevant times when Ecoco/Marit employed Bokor, Bokor was regularly in contact with his attorney regarding, among other Ecoco/Marit-related business, the BIPA lawsuit filed against Marit. *Id* ¶ 19. The lawsuit was amended three times, including converting the lawsuit into a putative Class Action and the last time, on October 18, 2022, naming Bokor as a plaintiff. *Id* ¶ 22.

During this time, Bokor had access to confidential and sensitive business information relating to the business of Ecoco/Marit, as well as to the Ecoco transaction with EStyle, all of which are relevant to the BIPA litigation. Complaint ¶ 32. During his employment, Bokor also was involved in privileged discussions with Marit's counsel regarding the BIPA litigation, and was a party to multiple communications, both written and oral, regarding strategic issues relating to the claims asserted. *Id* ¶ 34. Bokor's communications with Marit's counsel were privileged and Bokor could not waive the privilege.[2] *Id* ¶ 35.

Unbeknownst to Plaintiff, Bokor and his attorney had communicated for several years about Ecoco's and Marit's business operations, even as Bokor participated in strategy meetings and other confidential communications with counsel on behalf of Ecoco/Marit. Complaint ¶ 39.

---

[2] Under Illinois law, communications of corporate employees who are members of the control group and the corporation's counsel are protected by privilege. *See Consolidated Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103 (1982). Further, the privilege is held by the corporation. Individual members of the control group cannot waive the privilege on the corporation's behalf. *See Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 279 (N.D. Ill. 2004) (applying Illinois law).

4

By his admission, Bokor started communicating with his lawyer as early as 2016 and with certainty by 2018, relating to Ecoco, Marit, EStyle and the BIPA legal claims. *Id* ¶ 40.

After learning on October 19, 2022, that the BIPA plaintiffs' lawyer also represented Bokor, Marit's counsel sent the lawyer multiple email communications explaining that Bokor was privy to privileged and confidential information, including attorney work product, and that he had been party to multiple privileged communications with Ecoco/Marit's counsel about matters relating both to the claims and defenses in the BIPA litigation. Complaint ¶ 50. Marit's counsel asked the attorney to return all such materials. *Id* ¶ 51. The attorney refused to do so. *Id* ¶ 52.

Bokor took computers, documents and information belonging to Ecoco/Marit without authorization, including his Company-issued laptop and desktop computers, as well as company files and records contained therein. Complaint ¶ 57. Marit requested that Bokor return all documents and equipment belonging to Marit. *Id* ¶ 58. The request was denied. *Id* ¶ 59. While Bokor now contends that, as a result of a court order, he has returned all, or most, of the stolen property and files, that claim remains unscrutinized. Exh. 7.

## LEGAL STANDARD

On a motion to dismiss under Rule 12, a court must accept as true the well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). A court may grant a motion to dismiss under Rule 12 only if it appears beyond any doubt that the plaintiff cannot prove any set of facts that would entitle him or her to relief. *Moss v. HealthCare Compare Corp.*, 75 F.3d 276, 279 (7th Cir. 1996); *Taylor, Bean & Whitaker Mortg. Corp. v. Vincent Cebulak*, No. 03-C-7425, 2004 WL 2106605, at *6 (N.D. Ill. Sept. 20, 2004).

Relatedly, Bokor seeks to support his motion to dismiss by attaching documents to his pleading, including a self-serving and unexamined affidavit, from which he denies certain

5

allegations in the Complaint. While an exception exists to the normal rule precluding extrinsic evidence from being considered, a motion to dismiss can attach documents central to a claim and referenced in a complaint, "the exception clearly does not apply if the exhibit's authenticity is in question, or where discovery would be required to 'authenticate or disambiguate' it." *FDIC for Seaway Bank & Tr. Co. v. Urban P'ship Bank*, No. 17-cv-01517, 2018 WL 497285, at *6 (N.D. Ill. Jan. 22, 2018) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citations omitted) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice").

Some of Bokor's exhibits are authentic (*e.g.*, Exh. 9 and 10, which are court orders). But, others, such as Bokor's affidavits (Exh. 2, 16, 17), answers to interrogatories (Exhibits 19, 20, 21) and a Bokor-created list of items he purportedly returned (Exh. 7), are not self-authenticating and cannot be considered for purposes of adjudicating the instant motion.

## LEGAL ARGUMENT

As set forth below, each cause of action is adequately pleaded, and any effort to avoid answering for Bokor's violations of his legal obligations to Plaintiff lacks legal merit and, at best, is premature.

### 1. Count I (Replevin) and Count II (Conversion)

To recover for conversion, a plaintiff must show: "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). To establish a claim for replevin, a plaintiff must prove that: "(1) it is the relevant property's owner or lawfully entitled to its possession; (2) that the property is wrongfully

detained by the defendant (after the defendant has refused a demand to surrender the property); and (3) that the property is not subject to any state tax, assessment, or fine." *Walgreens Co. v. Peters*, No. 21 C 2522, 2021 WL 3187726, at *2 (N.D. Ill. July 28, 2021), citing 735 ILCS 5/19–104; *First Illini Bank v. Wittek Indus., Inc.*, 261 Ill.App.3d 969, 970 (Ill. App. Ct. 1994).

As alleged in detail—indeed, more detail than the Federal Rules require—Bokor absconded, without authority or permission, with goods and materials, money from the business bank account, computers, files and other records, and electronic data, Complaint ¶ 74.

Regarding the mootness issue, certain Marit's goods that Bokor stole were sold to a nursing home. Complaint ¶ 68. The allegations also relate to Bokor paying himself money from the Marit account to which he was not entitled. *Id* ¶ 69. Claims seeking relief for stolen funds or stolen property are proper, even had the funds or property been returned (which is not the case here). As the court in *Illinois Educ. Ass'n v. Illinois Fed'n of Tchrs.*, 107 Ill. App. 3d 686 (4th Dist. 1982), explained:

> There can be no doubt that, if the funds in the SVETA treasury actually belonged to the IEA, the distribution of the funds to defendants … for expenses they did not actually incur was a wrongful assumption of control over the personal property of another. That the funds were eventually returned to the treasury of SVETA will not insulate these defendants from liability. An action for conversion will lie even though the defendant has returned the property.

107 Ill. App. 3d at 689, *citing Barrelett v. Bellgard*, 71 Ill. 280 (1874) (action for conversion will lie even though the defendant has returned the property).

Concerning the property Bokor contends has been returned, identified in Bokor's Exh. 7, several additional points are relevant. First, even accepting him at his word, while Bokor contends that he returned files and data with which he absconded, he does not represent (nor could he) that he did not make copies returned copies of all such material. Copies are also the property of Marit, to which Bokor has no right.

7

Second, given the circumstances presented here, there is no reason to accept Bokor at his word. If the Court were inclined to consider Bokor's mootness claim, it is respectfully submitted that discovery be allowed to proceed immediately, both regarding whether Bokor returned all Marit property and regarding whether he retained copies or images of the Marit property.

Third, the mootness argument fails considering the nature of the claims. In addition to the return of property, the Illinois replevin statute also contemplates an award of damages. *See* 735 ILCS 5/19-125 ("If judgment is entered in favor of the plaintiff in replevin, the plaintiff shall recover damages for the detention of the property while the same was wrongfully detained by the defendant"). *MiMedx Grp., Inc. v. Fox,* No. 16 CV 11715, 2017 WL 3278913, at *6, *15 (N.D. Ill. Aug. 2, 2017); Wright & Miller, 13C Fed. Practice & Procedure § 3533.3 (3d ed.) ("The availability of damages or other monetary relief almost always avoids mootness"). Further, as Bokor acknowledges, any return followed a court order, which also defeats his argument, see *MiMedx Grp., Inc. v. Fox,* 2017 WL 3278913, at *15.

Regarding the digital files, Bokor generally is correct that intangible property cannot give rise to a conversion claim. *See Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 780-81 (N.D. Ill. 2017). Nonetheless, that rule is inapplicable when the intangible property is connected to tangible property, such as the computers and discs that Bokor took without authorization, at least until an adequate analysis can determine whether Bokor altered the tangible property. *See Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502, DuPage Cnty., Illinois,* No. 15-CV-09323, 2020 WL 11138332, at *2 (N.D. Ill. Nov. 30, 2020).

Bokor also seems to suggest that no demand has been made for the return of the property, generally a prerequisite for replevin and conversion actions. That argument is peculiar since Bokor attempts to support his argument with writings (contrary to the appropriate procedures at the

8

motion to dismiss stage) created during a prior-filed case, Exh. 2, 16, 17, 19, 20, 21, in which Bokor was ordered to return some of the materials, while simultaneously ignoring that the prior case included demands for the return of these same records and files at issue here. Moreover, there is no demand requirement where such a demand would have been futile. *In re Settlers' Housing Serv., Inc.*, 514 B.R. 258, 285 (N.D. Ill. 2014); *Gates v. Towery*, 456 F. Supp. 2d 953, 968 (N.D. Ill. 2006). A demand for stolen funds and for the return of stolen property sold to a third party is futile, since Bokor no longer controls the property.

Bokor's argument that the demands for the return of the property were somehow amorphous and lacked the requisite specificity makes no sense since Bokor attaches Exh. 7, a court-ordered list of items that he admits he took. Further, the claims in the Complaint relate, in addition to the stolen money and product, to the "data, files and information" stored on the computers and files, as identified in ¶ 74 of the Complaint and alleged throughout the Complaint, see, e.g., ¶¶ 1, 77. The Rule 8 notice pleading standard "requires only that a complaint give a 'short and plain statement showing that the pleader is entitled to relief.'" Rule 8(a)(2); see also *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015) (citing *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010)).

**2. Count III (Breach of Fiduciary Duty)**

Bokor was a high-ranking corporate officer responsible for the financial and record-keeping duties of Ecoco/Marit. Complaint ¶¶ 14, 17, 18. He was solely in charge of and responsible for the Illinois operation before and after the sale. *Id*.

To state a claim for breach of fiduciary duty, "a plaintiff must plead: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages to the plaintiff as a result of that breach." *McLaughlin v. Chi. Transit Auth.*, 243 F. Supp. 2d 778, 779 (N.D. Ill. 2003). A duty of loyalty to an employer "extends to officers, directors, and employees." *Advantage Mktg. Grp., Inc. v. Keane*,

9

143 N.E.3d 139, 147 (Ill. App. Ct. 2019). Corporate officers "owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed." *Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1059 (Ill. App. Ct. 1993). Misusing confidential information in violation of company policies constitutes a breach of fiduciary duty. *McLaughlin*, 243 F. Supp. 2d at 779.

Due to his position and responsibilities as financial controller of Ecoco/Marit, Bokor owed Plaintiff fiduciary duties of loyalty, fidelity and good care. Bokor breached his fiduciary duties to Ecoco/Marit, by, *inter alia*, stealing and otherwise wrongfully taking Plaintiff's property and depriving Plaintiff of access to that property, Complaint ¶ 83; by taking and also sharing with his counsel confidential information, data and files belonging to Plaintiff, *Id*; by violating Plaintiff's right to attorney-client confidentiality, including by sharing the substance of attorney-client communications and attorney work product with his attorney, *Id*; by engaging in self-dealing through misuse and misappropriation of corporate assets, including in furtherance of his prospective advantage over Marit in litigation and for his pecuniary benefit; by failing to disclose his conflicts of interest to Ecoco/Marit, *Id*; and, by cooperating with and assisting his attorney with its representation of parties adverse to Plaintiff during his Ecoco/Marit employment, *Id*. Bokor further breached his fiduciary duties to Plaintiff by misappropriating Ecoco/Marit's confidential information (including information constituting trade secrets and information protected by the attorney-client privilege) and using that information for his own benefit and to Ecoco/Marit's detriment. *Id* ¶ 84. As a result of Bokor's wrongful conduct constituting a breach of fiduciary duties, Plaintiff suffered damages that warrant recovery of its actual and compensatory damages in an amount not less than the sum of all compensation paid to him during the period of his breaches

and the value of the property that he stole or otherwise dissipated. *Id* ¶ 85. Further, Bokor acted with a high degree of moral culpability, with fraudulent intent and malice, willfully, or with such gross negligence as to indicate a wanton disregard of Plaintiff's rights and warranting recovery of punitive damages. *Id* ¶ 86.

Bokor argues that Marit failed to state a claim for breach of fiduciary because (1) it did not plead that Bokor's breach proximately caused damages; (2) the alleged confidential communications occurred after the end of Bokor's employment (*i.e.*, when Bokor no longer owed a fiduciary duty to Marit); (3) the crime/fraud exception to the attorney-client privilege applies; and (4) the ITSA preempts breach of fiduciary claims based on trade secrets/confidential information.

` As detailed above, there are sufficient allegations of causation to satisfy that pleading requirement. Not only does the Complaint allege that Bokor's breach of fiduciary duty resulted in litigation against Marit, Complaint ¶ 83, but his theft of funds, *Id* ¶ 74, and product, *Id* ¶ 68, 74, resulted, logically, in financial injury.

While Bokor's fiduciary duty owed to Marit may not have lasted post-employment, absent post-termination contractual obligations, such as a restrictive covenant, see *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992), Marit alleges that the breaches commenced as early as 2016 and no later than 2018, Complaint ¶ 40. The theft of extra salary and product, *Id* ¶ 68, 74, also clearly occurred while employed by Marit.[3] Furthermore, an

---

[3] Relatedly, Bokor references his alleged statement, citing Ex. 3: "To reiterate, prior to the end of my employment with Marit/Ecoco, I never discussed this lawsuit with Mr. Garfinkel." First, the statement improperly raises a fact issue. It also does not negate the allegations of improper information sharing related to the lawsuit, which can occur without discussing the suit itself. Second, it appears that Bokor refers to, but did not file attach, Exhibit 3 to the motion to dismiss, and thus the Court should strike or ignore those unsupported statement. Third, it would be unreasonable for the Court, in the context of a motion to dismiss, to credit Bokor's own statement, see, for example, Exh. 2, 16, 17, when the plaintiff

11

employee in Illinois breaches his fiduciary duty of loyalty "by taking action, such as downloading or copying employer data, in order to compete with the employer after their employment has ended." *PrimeSource Bldg. Prod., Inc. v. Felten*, No. 16 CV 11468, 2017 WL 11500971, at *8 (N.D. Ill. July 6, 2017) (quoting *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 837–38 (C.D. Ill. 2014)). The same principle applies when an employee takes corporate information and data so that the employee can sue the employer post-employment.

Further, Bokor's effort to support his motion by invoking affidavits, Exh. 2, 16, 17, has no weight. *See Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999) (rejecting defendant's effort, in the context of a motion to dismiss, to credit an affidavit from the defendants' manager as to the amount of gross sales when the plaintiff had no real opportunity to contest the allegation, explaining that a credibility evaluation cannot be made from the face of an affidavit).

Bokor's crime/fraud exception argument also is misplaced. The exception places communications made in furtherance of a crime outside attorney-client privilege. *See United States v. Zolin,* 491 U.S. 554, 563 (1989). Bokor does not argue that Tiram discussed committing a criminal act with an attorney and that those communications are not privileged; rather, Bokor argues that his communications with his attorney about Tiram's alleged criminal acts are not privileged. Even by Bokor's fictional rendition, Bokor is not the alleged wrongdoer—Tiram is. This is not how the crime/fraud exception works. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007).

Bokor similarly is wrong in arguing that the ITSA preempts Marit's breach of fiduciary duty claims arising from the use of confidential information. Allegations not directly predicated

---

has had no opportunity to contest the representations through discovery, s*ee Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999).

on the misappropriation of a trade secret (such as confidential information) are not preempted by the ITSA. *See Walgreens Co. v. Peters*, No. 21 C 2522, 2021 WL 4502125, at *3 (N.D. Ill. Oct. 1, 2021), citing with approval *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005) (ITSA did not preempt a fiduciary duty claim based on defendant's taking of a non-confidential customer list, finding that "claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets" (collecting cases)). Stealing company products and paying unearned money to oneself does not involve the misappropriation of trade secrets, nor does the taking without authorization of company files and records that do not contain trade secrets. *See Christopher Glass & Aluminum, Inc. v. O'Keefe*, No. 1:16-CV-11532, 2017 WL 2834536, at *4 (N.D. Ill. June 30, 2017) (ITSA does not preempt breach of fiduciary duty allegations related to solicitation of employees and customers and misuse of confidential information as they are not directly predicated on the misappropriation of a trade secret), *see Brian J. Wanca, J.D., P.C. v. Oppenheim*, 2023 IL App (1st) 220273, ¶ 43 (breach of fiduciary duty claim based on allegation that former employee accepted compensation from future employer and took confidential documents prior to departure, including e-mails and other documents that plaintiff did not claim to be protected "trade secrets").

### 3. Count IV (Fraudulent Inducement)

Bokor violated his duties to Ecoco/Marit as early as 2016 and certainly by 2018. Complaint ¶ 40. Bokor's breaches were already well underway when the purchaser of the business decided not to bring Bokor aboard, and Bokor enticed Tiram in 2020 to hire him for Marit as its Controller and sole employee and to assign him to provide services for Marit in assisting the transition, Complaint ¶ 16, 17, based upon Bokor's pledges to be a loyal and productive employee and claims that he had proven himself to be such, *Id*. Bokor remained the Marit financial controller from September 5, 2020, through on or about August 16, 2022. Complaint ¶ 18.

While representations about future performance or events are not actionable for fraud, *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F.Supp.2d 759, 768 (N.D. Ill. 2011), under Illinois's scheme exception to the prohibition against "promissory fraud," such representations are actionable when the speaker does not intend to carry out the promised performance or are made as part of a scheme to accomplish the fraud, *Bower v. Jones,* 978 F.2d 1004, 1011 (7th Cir.1992). Bokor cannot credibly contend that he would change his prior course of duplicity when he made those representations about future performance in September 2020.

Further, the Amended Complaint includes sufficient allegations as to the who, what, when, where and how of the fraud to give adequate notice to Bokor about his fraudulent inducements. *See 3Com Corp. v. Elecs. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 938–39 (N.D. Ill. 2000); *Nepomonceno v. Knights of Columbus,* 1999 WL 66570, at *13 (N.D.Ill. Feb.8, 1999). The promises made to Tiram of ongoing loyalty and pledges of good work, Complaint ¶ 16, occurred when the Company was being sold to EStyle in 2020, *Id* ¶ 3, clearly at the Illinois facility where Bokor asked to remain, and the manner was direct requests to Tiram, *Id* ¶ 16.

4. **Count V (Violation of Illinois Trade Secrets Act)**

Bokor seeks to avoid answering for his violations of the Illinois Trade Secrets Act by arguing that (1) Ecoco/Marit did not allege that it made efforts to maintain secrecy of trade secrets and (2) all trade secrets were sold to EStyle via the APA and thus Marit does not have standing to make the claim. Neither argument can succeed.

First, Ecoco/Marit properly safeguarded the trade secrets, see *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 897 (N.D. Ill. 2019) (law requires reasonable efforts to maintain the secrecy of the information that constitutes a trade secret), by entrusting those secrets to the care and control of its Controller, long-time employee and member of the business' control group– Bokor–who was the primary person assisting with the sale and transition of the business.

14

Complaint ¶ 17, 18, 82; *see also* Complaint Paragraph 99 (Bokor was "positioned to exploit Marit's attorney-client privileged materials, attorney work product and confidential financial data to his advantage"). Marit satisfied its obligation by entrusting such materials only to those who needed access. *See Vendavo, Inc. v. Kim Long*, 397 F. Supp. 3d 1115, 1136 (N.D. Ill. 2019). Bokor's ironic and apparent admission that Ecoco/Marit did not make adequate efforts to safeguard the information because it entrusted him to satisfy his obligations does not serve his effort to avoid liability for his actions.

Second, the APA itself, which included company confidential information and a pledge of confidentiality, *see* 765 ILCS § 1065/2(d), falls within the scope of the Act. A trade secret is information "that (1) is sufficiently secret to derive economic value, actual or potential, from not being generally to other persons who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS § 1065/2(d). The APA was not "sold" to the buyer of the business. Ecoco/Marit had a right to retain the APA and an obligation by the agreement's explicit terms to keep its terms confidential. Bokor's dissemination of the APA to his counsel, an attorney already adverse to Ecoco/Marit, violated that pledge of confidentiality. Complaint ¶ 83.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that Defendant William Bokor's motion to dismiss be denied in its entirety. In the alternative, if the Count determines that any claim is not adequately pleaded, it is respectfully requested that Plaintiff be granted an opportunity to file an amended pleading.

15

| | |
|---|---|
| Dated: January 16, 2024 | **By:** /s/ Peter R. Ginsberg |
| | Peter R. Ginsberg (pro hac vice)<br>Moskowitz Colson Ginsberg and Schulman, LLP<br>80 Broad St, 19th Floor<br>New York, New York 10004<br>pginsberg@mcgsllp.com<br>(212) 257-6455 |
| | *Attorneys for Plaintiff* |
| | Mitchell B. Katten ARDC # 6199109<br>William Bruce<br>Katten & Temple LLP # 45583<br>209 South LaSalle, Suite 950<br>Chicago, IL 60604<br>mkatten@kattentemple.com<br>wbruce@kattentemple.com<br>312-663-0800 |
| | *Local Counsel for Plaintiffs* |

16