IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Marit, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-CV-15912 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| William Bokor, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This captious diversity action removed from state court is part of a long-running dispute between plaintiff Marit, LLC ("Marit"), formerly known as Ecoco, Inc., and its former comptroller, defendant William Bokor. By order dated September 24, 2024, this court dismissed in part Marit's original complaint and granted Marit leave to file an amended complaint. *See Marit, LLC v. Bokor*, No. 23-CV-15912, Order at 15, Dkt. No. 22 [hereinafter "Sept. 2024 Order"]. Marit filed an amended complaint, and Bokor has moved to dismiss it or, alternatively, for a more definite statement. *See* Am. Compl., Dkt. No. 23; Corrected Mot. to Dismiss Am. Compl. 29–30, Dkt. No. 30 [hereinafter "MTD"]. After briefing on Bokor's pending motion to dismiss was complete, he filed three separate sanctions motions. The first is a motion to revoke the order admitting Marit's attorney, Peter Ginsberg, *pro hac vice*. Dkt. No. 35 at 1. Bokor's second and third motions request that the court impose sanctions under Rule 11 of the Federal Rules of Civil Procedure. Dkt. Nos. 36, 47. For the reasons discussed herein, the court denies the sanctions motions and dismisses the amended complaint for failure to join a necessary party.

      I.  FACTUAL AND PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the September 2024 Order, including its detailed recital of the original complaint's factual allegations and claims. *See* Sept. 2024 Order at 1–4. Marit's amended complaint sets out substantially the same core of operative facts as the

original complaint. A synopsis of allegations of special relevance to the pending motions follows.

Until 2020, Bokor worked for Ecoco, Inc. ("Ecoco"), a predecessor company to plaintiff Marit. *See* Am. Compl. ¶¶ 3, 15. On September 4, 2020, EStyle, LLC. ("EStyle"), purchased "virtually all of" Ecoco's and its subsidiaries' assets. Am. Compl. ¶¶ 12–13. The balance of Ecoco's assets appear to have been transferred to Marit, which was formed immediately after, and as part of, the acquisition. *See* Am. Compl. ¶ 14.

EStyle decided not to retain Bokor after the acquisition. Am. Compl. ¶¶ 16, 19. Marit, however, hired Bokor to be its comptroller and employed him from September 5, 2020, through August 16, 2022. *See* Am. Compl. ¶¶ 18–25.

In its amended complaint, Marit alleges that Bokor misappropriated data, information, funds, and physical property during and at the end of his tenure and that he shared all or a portion of what he took with attorney Haskel Garfinkel. *See* Am. Compl. ¶¶ 1–2. Garfinkel and Bokor are related by marriage; they have grandchildren in common. *See* Am. Compl. ¶¶ 54–55. Marit alleges that, unbeknownst to it, Bokor absconded with confidential information and passed it to Garfinkel, who used it to, among other things, identify clients (former Marit employees); file multiple lawsuits against Marit in state and federal court in Cook County, Illinois; and use Marit's confidential information to his advantage while litigating those suits. *See* Am. Compl. ¶ 15, 25–29, 44–53, 69–76.

Like the original complaint's counts, the amended complaint's five counts arise under Illinois law. In order of pleading, the amended complaint's counts are for: (1) replevin; (2) conversion; (3) breach of fiduciary duty; (4) fraudulent inducement of contract; and (5) violating the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq*. Am. Compl. ¶¶ 80–105.

In the September 2024 Order, the court granted in part and denied in part Bokor's motion to dismiss the original complaint. *See* Sept. 2024 Order at 15. Specifically, the court dismissed Marit's replevin and conversion claims "insofar as (1) they are based on the taking and retention

of intangible digital files and data; and (2) they are based on the taking and retention of the funds described in paragraph 68 of the complaint." *Id*. Marit withdrew its breach of fiduciary duty claim in part, so the court dismissed it "insofar as it is based on the taking of information alleged to be a trade secret." *Id*. Finally, the court dismissed Count IV for fraudulent inducement because Marit failed to plead it with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, and Count V, the ITSA claim, was dismissed for failure to state a plausible claim. *See id*.

## II. MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT

The pending motion to dismiss and sanctions motions raise a recurring set of factual and legal issues and arguments, which are packaged variously under the headings of Article III standing, failure to join a necessary party, failure to state a claim upon which relief can be granted, and alleged Rule 11 violations. For the reasons set forth below, the amended complaint must be dismissed for failure to join a necessary party. But first, a short detour is in order to address threshold waiver arguments.

### A. Waiver

Bokor moved under Rules 12(b)(1) and (6) to dismiss the original complaint for failure to state a claim upon which relief can be granted and to dismiss the replevin and conversion claims as moot. *See* Orig. Mot. to Dismiss 7–22, Dkt. No. 16. In moving to dismiss the amended complaint, Bokor raises Rule 12(b)(6) arguments concerning the amended complaint, as well as three Rule 12 arguments he did not raise in his first motion to dismiss. Bokor contends for the first time that Marit lacks standing, which contention challenges subject matter jurisdiction under Rule 12(b)(1); a Rule 12(b)(6) argument that replevin claims must be set out in a verified pleading; an argument under Rule 12(b)(7) that the amended complaint should be dismissed for failure to join a necessary party; and a motion under Rule 12(e) for a more definite statement.

3

*Compare* Mot. to Dismiss Am. Compl. 6–29, Dkt. No. 30, *with* Orig. Mot. to Dismiss 7–22, Dkt. No. 16.

Rule 12(g)(2) provides: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The cross referenced rule, Rule 12(h)(2), makes exceptions for the defenses of "Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim;" these defenses "may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion [for judgment on the pleadings] under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2); *see also id*. R. 12(h)(1).

The court cannot find Bokor's standing challenge waived because lack of subject matter jurisdiction is nonwaivable. Fed. R. Civ. P. 12(h)(3). Furthermore, even though Marit's argument concerning verification of the replevin claim was available to it when it moved to dismiss the original complaint, "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." *Ennenga v. Starns*, 677 F.3d 766, 791 (7th Cir. 2012). Thus, Marit may raise its Rule 12(b)(6) verification challenge to the replevin claim. Marit may also raise its Rule 12(b)(7) joinder contentions because "[failure] to join a person required by Rule 19(b)" is expressly exempted from waiver under Rule 12(h)(2).

However, Rule 12(h)(2) makes no exception for a Rule 12(e) motion for more definite statement. Bokor asserts that a more definite statement should be ordered because the amended complaint's allegations are "vague and ambiguous." Mot. to Dismiss Am. Compl. 26. These arguments challenge the clarity of the amended complaint's allegations taken as a whole. *See id*. Since the amended complaint's allegations elaborate upon the allegations made in the original, Bokor's Rule 12(e) objections were "available" to him when he moved to dismiss the original complaint. Fed. R. Civ. P. 12(g)(2). Bokor has therefore waived his Rule 12(e) objection and

4

motion for a more definite statement. *See id.*; *Windowmaster Corp. v. Morse/Diesel, Inc.*, 1987 WL 27354, at *1 (N.D. Ill. Dec. 4, 1987).

**B. Joinder of EStyle**

Bokor relies heavily on the September 4, 2020, purchase agreement by which EStyle acquired substantially all of Ecoco and its subsidiaries' assets. *See, e.g.*, Mot. to Dismiss Am. Compl. 6–9. Bokor maintains that EStyle acquired the trade secrets, intellectual property rights, and tangible property rights at issue in Marit's amended complaint. *See id.* Based on his construction of the asset purchase agreement, Bokor argues that Marit lacks standing and that EStyle must be joined as a necessary party under Rule 19(b). *See id.* at 5–9. Bokor also contends Marit lacks Article III standing because the rights Marit is asserting belong to EStyle, again based on his reading of the September 4, 2020, asset purchase agreement. *See id.* at 9–11.

Marit responds that Bokor is incorrect about the asset purchase agreement. *See* Resp. to Mot. to Dismiss 18–19 & n.7, Dkt. No. 33. Marit points to allegations in its amended complaint that it, Marit, was formed the day immediately after EStyle's acquisition and that Marit continued to provide services to EStyle for nearly two years during which it also employed Bokor. *See id.* at 18.

The foregoing arguments raise two distinct issues. First, Bokor and Marit advance competing interpretations of the asset purchase agreement, requiring the court to construe it by applying principles of contract interpretation. Second, to the extent the amended complaint is unclear on this point, factual questions may need to be answered concerning precisely what property is at issue.

The question is whether EStyle must be joined before the court construes and applies the asset purchase agreement to which EStyle is a party. Rule 19(a)(1) controls this joinder question:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

"The purpose of Rule 19 is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Askew v. Cook Cnty. Sheriff*, 568 F.3d 632, 635 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). On a motion to dismiss for failure to join a party required by Rule 19, "the movant bears the burden of demonstrating that the absent party is a necessary and indispensable party that must be joined." *Ochs v. Hindman*, 984 F. Supp. 2d 903, 906 (N.D. Ill. 2013) (citation omitted). The Rule 19 joinder analysis proceeds in two steps:

> First, the court must determine whether a party is one that should be joined if feasible–called, in the old days, a "necessary party." Fed. R. Civ. P. 19(a); *Hall v. Tribal Dev. Co.*, 100 F.3d 476, 478 (7th Cir. 1996). If the court concludes that the party should be included in the action but it cannot be, it must go on to decide whether the litigation can proceed at all in the party's absence. Fed. R. Civ. P. 19(b).

*Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (quoting *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999); citation modified); *see Askew*, 518 F.3d at 635–36.

Bokor contends that he faces a substantial risk of incurring inconsistent or multiple obligations because EStyle could sue him based on interests claimed in the property rights Marit seeks to enforce here. Marit responds that no such risk exists because its construction and interpretation of the purchase agreement is the correct one. But that puts the proverbial cart before the horse. If the court were to construe the asset purchase agreement as part of the joinder analysis and conclude, as Marit wishes, that EStyle has no rights in the tangible and intangible property at issue, that ruling would obviously impair EStyle's interests. Yet EStyle is not a party,

6

and it has had no opportunity in this court to be heard on the questions Marit and Bokor have raised affecting EStyle's rights under the asset purchase agreement.

In analogous cases in which construction and application of an asset purchase agreement have been at issue, courts have ruled that an absent party to the purchase agreement "clearly" has an interest in the subject matter sufficient to require joinder, if feasible, under Rule 19(a)(1)(i). *See Schneiker v. Commc'ns Eng'g Co.*, 2024 WL 1071801, at *5 (E.D. Wis. Mar. 12, 2024); *Chaudry v. Musleh*, 2018 WL 3361846, at *3–4 (N.D. Ill. July 9, 2018); *GE Healthcare v. Orbotech, Ltd.*, 2009 WL 2382534, at *6–7 (E.D. Wis. July 2, 2009).

Furthermore, there is no dispute that joinder of EStyle is feasible within the meaning of Rule 19(a)(2). *See Askew*, 518 F.3d at 636. Given the amended complaint's allegations that EStyle maintained operations in Chicago, the court has no reason to doubt that it is amenable to service of process. Regarding jurisdiction, Marit represents that complete diversity of citizenship under 28 U.S.C. § 1332(a)(1) will be maintained if EStyle is joined as a defendant because for diversity purposes, EStyle is a citizen of Delaware and New York. Mot. to Dismiss Am. Compl. 8. For these reasons, the court need not analyze Rule 19(b), which applies where joinder would destroy diversity jurisdiction.

Having ruled that the amended complaint must be dismissed for failure to join EStyle, the court does not reach Bokor's alternative arguments for dismissal. *See Chaudry*, 2018 WL 3361846, at *3. Bokor's challenge to Marit's standing is predicated on his contentions about the construction and application of the asset purchase agreement. As discussed above, it would be premature and prejudicial to reach those arguments in EStyle's absence.

### III. MOTION TO REVOKE *PRO HAC VICE* ADMISSION

While briefing was underway on Bokor's motion to dismiss the amended complaint, Bokor filed a motion to revoke the *pro hac vice* admission of Marit's attorney, Peter Ginsberg, and to strike all papers signed by him. Dkt. No. 35 at 1. "Whether to grant or revoke a *pro hac vice* admission are matters addressed to the sound discretion of the district court." *Bailey v.*

7

*Worthington Cylinder Corp.*, 90 F.4th 1193, 1196 (7th Cir. 2024), *cert. denied,* 144 S. Ct. 2700 (2024) (citing *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 954 (7th Cir. 2020)). As the Seventh Circuit has explained:

> Admission *pro hac vice* is a privilege, not a right. *See Leis v. Flynt*, 439 U.S. 438, 442 (1979) (*per curiam*). We recognize that attorneys may have an interest in that privilege, but that does not abridge the district court's inherent authority "to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531 (1824)); *In re Snyder*, 472 U.S. 634, 645 n.6 (1985) ("Federal courts admit and suspend attorneys as an exercise of their inherent power."). When an attorney abuses the privilege of appearing *pro hac vice*, the district court may revoke that privilege as a sanction for misconduct. All that is required before an attorney's admission *pro hac vice* is revoked is adequate notice of the conduct in question and a reasonable opportunity to be heard on the matter. We leave it to the sound discretion of the district court to determine the appropriate notice and opportunity to respond in each individual case.

*Royce*, 950 F.3d at 954.

The sufficiency of notice in the case at bar is not contested. Bokor's written motion to revoke gave notice of the grounds on which he seeks revocation. Dkt. No. 35. Ginsberg responded in writing. Dkt. No. 43. He does not request a hearing, and neither party has identified any contested issue requiring one.

The form application for admission *pro hac vice* adopted by this court requires an applicant to list all discipline imposed by any court. *See* N.D. Ill. L.R. 83.14. Ginsberg disclosed no prior discipline on the application for admission *pro hac vice* he filed in this case. *See* Dkt. No. 8 at 2. It is undisputed that Ginsberg failed to disclose sanctions imposed nearly two decades ago by the United States Bankruptcy Court for the Middle District of Florida. *See* Ginsberg Aff. ¶¶ 1–16, Dkt. No. 43-1.

In 2009, the Eleventh Circuit affirmed the bankruptcy court's factual findings, legal conclusions, and sanctions in all respects. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257 (11th Cir. 2009). Specifically, the bankruptcy court sanctioned Ginsberg for filing and pursuing a groundless recusal motion as a delay tactic. *See id.* at 1262–63 & n.3. The bankruptcy court

8

"imposed monetary sanctions of $371,517.69 against Ginsberg and barred him from practicing before the United States Bankruptcy Court for the Middle District of Florida for a period of five years." *Id*. at 1262. In affirming, the Eleventh Circuit held that "the bankruptcy court was not clearly erroneous in finding no factual support for Ginsberg's assertion that the existence of the Complaint created an appearance of impropriety requiring recusal" and affirmed the bankruptcy court's finding that "the Recusal Motion lacked legal support." *Id*. at 1265–67; *see id*. at 1265-73. The Eleventh Circuit also affirmed the bankruptcy court's finding "that Ginsberg filed the Recusal Motion to postpone the involuntary bankruptcy proceedings against his client" and in a related appeal. *Id*. at 1275.

In the instant matter, Ginsberg attaches to his response memorandum a document entitled "affirmation," in which he makes statements under penalty of perjury. Dkt. No. 43-1; *see also* 28 U.S.C. § 1746 (requirements for unsworn declarations). Ginsberg avers that he "immediately self-reported the sanctions to the New York bar and the Bar for the District of Columbia," of which he was a member at the time. Ginsberg Aff. ¶¶ 6–7. Neither bar imposed further discipline. *Id.* Also, Ginsberg was admitted to this court's trial bar on May 10, 2023, more than seven months before this case was filed. *See* Ginsberg Aff. ¶ 3. Ginsberg further avers that internal communications, apparently of his law firm, reflect: "notwithstanding my Northern District of Illinois admission, the Clerk of the Court informed my office that a *pro hac vice* application was still required because of my out-of-state residency, so we followed that advice." *Id.*

Regarding his decision not to disclose to this court the bankruptcy court's sanctions in the *Evergreen* matter, Ginsberg states:

> 8. The disclosure requirements of the Florida sanctions were unclear. An ethics expert advised me that disclosure was not mandatory given the nature of the Florida Court's sanctions and, unofficially, I was informed by the New York Bar that disclosure requirements of the sanctions was unclear and that I would need to make my own determination regarding disclosure. At that same time, I was told by the New York Bar help-line attorney that, if I

9

> determined that disclosure were required, the period of disclosure would be for the five-year sanction period plus an additional five years.
>
> 9. I decided, out of an abundance of caution and based upon my reading of various rules and regulations of courts throughout the United States, that I would make disclosure of the sanctions for ten years, and I did so.

Ginsberg Aff. ¶¶ 8–9.

Ginsberg cites no rule of this court, or any other arguably applicable rule, that places a time limit on the disclosure of sanctions. Out of an abundance of caution, the prudent course would have been to disclose the *Evergreen* matter. That said, given the age of this sanction and Ginsberg's lack of other disciplinary history, this court can say with confidence that it would have permitted Ginsberg to appear *pro hac vice* if he had disclosed the sanction imposed in the *Evergreen* matter.

But Ginsberg became a member of this court's trial bar before he filed his motion for leave to appear *pro hac vice*. Ginsberg Aff. ¶ 3. Under Local Rule 83.12(a), members of the trial bar of this court may appear in all matters. It is thus implicitly clear that members of the trial bar of this court are not required to file motions to appear *pro hac vice*. Revoking Ginsberg's admission *pro hac vice* would therefore be pointless since he was permitted to file an appearance without such a motion. Why revoke permission the court did not need to give? The correct disposition is to withdraw the order granting Ginsberg leave to appear *pro hac vice* because Ginsberg's motion was moot when it was filed and decided. The order admitting Ginsberg *pro hac vice* is withdrawn. Dkt. No. 10. And for the same reasons, the court declines to impose sanctions under 28 U.S.C. § 1927 or its inherent authority. It would be perverse to sanction an attorney, much less the attorney's client, for failing to disclose something in a form the attorney was not required to file.

## IV. Rule 11 Motions

Bokor has filed two separate Rule 11 motions to sanction Marit and its attorney, Ginsberg. Dkt. Nos. 36, 47. The first motion challenges representations made in the original complaint, the amended complaint, and Marit's responses to Bokor's motions to dismiss the

10

original and amended complaints. First R. 11 Mot. at 2, Dkt. No. 36. The second Rule 11 motion amplifies the arguments made in the first motion with new evidence. Second. R. 11 Mot. at 1–2, Dkt. No. 47. Bokor argues that a deposition, taken in another case, of Marit's owner, Aaron Tiram, further supports his arguments that a Rule 11 violation has occurred. *See id.*; *see also Keigan v. Marit, LLC, and Aaron Tiram,* No. 23-CV-1398 (N.D. Ill. Sept. 23, 2025) (Perry, J.) (motion for voluntary dismissal granted Sept. 23, 2025).

> Rule 11(b) reads:
>
> > By presenting to the court a pleading, written motion, or other paper, whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> >
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

As the Seventh Circuit has explained, "Rule 11 is not a fee-shifting statute in the sense that the loser pays. It is a law imposing sanctions if counsel files with improper motives or inadequate investigation." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989); *see generally id*. at 932–33. Bokor argues that Marit violated Rule 11 in three ways by presenting and advocating its complaints and legal memoranda. Contrary to Marit's positions, Bokor argues that (1) Marit does not, and did not, own the property and assets it sought to recover in its original and amended complaints because they were sold to EStyle in the asset

11

purchase agreement of September 2020; (2) certain assets made the subject of Marit's conversion and replevin claims had been returned to Marit before it filed its original complaint; (3) that Tiram's deposition testimony proves that conversations alleged in the amended complaint did not in fact occur; and (4) Marit's allegations that Garfinkel refused to disclose steps taken to safeguard certain privileged information in earlier litigation are untrue. *See* First R. 11 Mot. at 3-5; Second. R. 11 Mot. at 2-11.

Beginning with Bokor's first two contentions, as explained in Part II, *supra*, a good faith dispute exists over Marit's first Rule 11 argument concerning ownership of the tangible and intangible assets at issue in the amended complaint. EStyle must be joined before the court construes the asset purchase agreement and determines whether Marit owns all or some of the assets at issue. As for the argument concerning returned property, the court resolved that question in Bokor's favor in the September 2024 Order, dismissing portions of Marit's replevin and conversion claims as moot based on evidence that the property had been returned. *See* Sept. 2024 Order at 15; *id.* at 6–9.

In short, Bokor uses its Rule 11 motions to re-argue the merits of issues that were contested in good faith on motions to dismiss the original and amended complaints. Neither of Marit's positions rise to the level of a Rule 11 violation.

> Rule 11 ordinarily should not be used as a proxy to litigate the merits of a case. If claims lack merit on their face as a matter of law, then a motion to dismiss is appropriate. If a plaintiff does not have enough evidence as a matter of law to prove his claims, that determination usually is made toward the end of the litigation or, at a minimum, after discovery has been completed.

*Dunnhumby USA, LLC v. Emnos USA Corp.*, 2013 WL 12306482, at *3 (N.D. Ill. Dec. 12, 2013) (quoting *Lanphere 1 Corp.*, 2012 WL 1965436, at *3 (N.D. Ill. Apr. 23, 2012)).

Bokor's third Rule 11 argument amounts to an attempt to use Tiram's deposition testimony from another case to obtain a premature summary judgment ruling before any discovery has been taken. Bokor points to a portion of Tiram's deposition transcript in which he testified that he was travelling in Florida between September 1 and 4, 2020. *See* Tiram

12

Dep. 361–62, Dkt. No. 47 Ex. 1. Bokor maintains that this testimony conclusively refutes the first amended complaint's allegations, *see* Am. Compl. ¶¶ 18–22, that Bokor had certain conversations with Tiram in the company's Chicago office. In the first place, Tiram's testimony is equivocal. Although he ultimately testified that he was in Florida between September 1 and 4, the immediately preceding testimony could reasonably be interpreted as casting doubt on the accuracy of his memory. *See* Tiram Dep. 360–63. Indeed, when asked if he remembered whether he was in New York when he signed the papers closing the EStyle acquisition on September 4, 2020, Tiram responded, "I don't remember." *Id.* at 360. Regardless, Tiram's deposition testimony does not necessarily contradict the first amended complaint's allegations. That is because Bokor's argument assumes a fact not alleged in the amended complaint, namely, that an in-person conversation occurred. The first amended complaint does not say whether Bokor and Tiram spoke in person, by phone, or via another medium. *See* Am. Compl. ¶¶ 18–21. It would be reasonable to interpret the amended complaint as describing a "conversation," with that word being used as a shorthand for a phone call. *See id.* At most, Tiram's deposition testimony raises a factual question that would be appropriately explored in discovery. But no Rule 11 violation has been shown. As in *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Services, Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993), "On this record it cannot be said that competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint or in their arguments in opposition to the defendants' motion to dismiss."

Bokor's fourth and final Rule 11 contention concerns the following allegations of the amended complaint:

> 55. After learning on October 19, 2022, that Garfinkel represented Bokor, Marit's counsel sent Garfinkel multiple email correspondences explaining that Bokor was privy to privileged and confidential information, including attorney work product, and that he had been party to multiple privileged communications with Marit's counsel about matters relating to both the Federal Action and the State Action, the claims asserted in those actions, and Marit's strategy with regard to the defense of those actions.

13

56. Based on the foregoing, Marit's counsel asked Garfinkel to "immediately disclose what steps, if any, [Garfinkel] took at the outset of [his] representation of Mr. Bokor (as well as the steps [Garfinkel] continue[s] to take) to ensure that [he was] not obtaining and will not obtain any confidential or privileged information in connection with this matter."

57. Garfinkel refused to do so.

58. Marit's counsel also asked Garfinkel to identify the date it began discussing the subject matter of the disputed [sic] and when Garfinkel began representing Bokor, both dates being relevant to the question of when Garfinkel communicated with a represented party and implicates [sic] Illinois Rule of Professional Conduct 4.2 and Model Rule of Professional Conduct 4.2.

59. Garfinkel refused to do so.

Am. Compl. ¶¶ 55–59.

Bokor argues that the foregoing paragraphs, versions of which also appeared in the original complaint, are inaccurate, but Bokor rests his argument entirely on a transcript of a state court hearing in which one of its attorneys argued that "we had said in writing what safeguards were put in place." First R. 11 Mot. 5, Dkt. No. 36. What, if anything, this dispute has to do with any fact of consequence to the claims here has not been explained and is not obvious to the court.

This much the court can tell: Bokor cites a lawyer's argument about out-of-court communications between counsel. So the final Rule 11 dispute comes down to Marit, through counsel, having represented that proposition X is true in the original and amended complaint. Bokor moves for sanctions pointing to a lawyer representing in state court, where Rule 11 does not apply, that X is partially inaccurate. "Rule 11 is addressed to conduct (the adequacy of the pre-filing investigation) rather than to results . . . ." *Mars Steel*, 880 F.2d at 938 (citing *In re Ronco, Inc.*, 838 F.2d 212, 218–19 & n.10 (7th Cir. 1988)). Lawyers disagree every day in open court. Dueling representations of counsel like those here—especially on a matter of questionable materiality—do not come close to showing an inadequate pre-filing investigation as would support finding a Rule 11 violation. No Rule 11 violation has been shown.

14

## V. CONCLUSION

For the reasons stated, defendant's motion to dismiss, Dkt. No. 30, the amended complaint for failure to join a necessary party required by Federal Rule of Civil Procedure 19(b) is granted. The amended complaint is dismissed, and plaintiff is given twenty-one days to file a second amended complaint joining EStyle, LLC. The court's order admitting attorney Peter Ginsberg *pro hac vice* is withdrawn because it was moot when issued, Ginsberg having been a member of this court's trial bar when this case was filed. Dkt. No. 10. Defendant's motion to revoke Ginsberg's admission *pro hac vice*, Dkt. No. 35, is denied, and defendant's Rule 11 motions for sanctions, Dkt. Nos. 36 and 47, are denied.

Date: September 29, 2025  /s/ Joan B. Gottschall
United States District Judge