IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-15912 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| WILLIAM BOKOR and ESTYLE CORP., LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

Defendant William S. Bokor moves to dismiss plaintiff Marit, LLC's six-count second amended complaint, Dkt. No. 59, in part as moot, in part for failure to state a claim upon which relief can be granted, and in part for failure to meet the heightened standard for pleading claims sounding in fraud. Mot. Dismiss, Dkt. No. 76. The court grants the motion in part and denies it in part for the reasons discussed below.

## I. BACKGROUND

Two opinions have issued in this case, which, despite its age, has not proceeded beyond the pleading stage. The second amended complaint's allegations do not materially differ from those of the first amended complaint, except that the second amended complaint joined a defendant the court ruled is a necessary party, the newly named defendant being EStyle Corp., LLC. *Compare* First. Am. Compl., Dkt. No. 23, *with* Second Am. Compl.; *see also Marit, LLC v. Bokor*, 2025 WL 2765126, at *3–4 (N.D. Ill. Sept. 29, 2025) [hereinafter "*Marit II*"].

Like its predecessors, the second amended complaint pleads six claims arising under Illinois law: replevin; conversion; breach of fiduciary duty; fraudulent inducement of contract; violation of the Illinois Trade Secrets Act (ITSA), 765 Ill. Comp. Stat. 1065; and a claim for declaratory relief, specifically, a declaration that Marit has an "exclusive right of ownership of the assets at issue." *See* Second Am. Compl. ¶¶ 94–131 (quotation in ¶ 127). The core of factual

allegations have not changed since the original complaint, though the second amended complaint pleads additional details in some instances. The 2024 and 2025 orders set forth most of the background facts as they were pleaded in prior iterations of the complaint; those factual allegations will not be repeated here. *See Marit II*, 2025 WL 2765126, at *1–2; *Marit, LLC v. Bokor*, No. 23-cv-15912, slip op. at 1–4 (N.D. Ill. Sept. 24, 2024) (Dkt. No. 22) [hereinafter "*Marit I*"].

To recap briefly, the second amended complaint alleges that Bokor was employed by Marit's predecessor company, Ecoco, Inc., "[f]rom November 2016 until on or about September 5, 2020." *See* Second Am. Compl. ¶ 26. EStyle purchased Ecoco in 2020, acquiring "virtually all, but not all" of Ecoco's assets. *Id.* ¶ 22. Bokor then served as Marit's financial controller from September 5, 2020, until August 16, 2022. *See id.* ¶¶ 26, 35. Marit alleges that Bokor absconded with property belonging to Marit, including alleged trade secrets and confidential information, when his employment ended and that he breached his fiduciary duties by colluding, during and after his employment, with non-party attorney Haskell Garfinkel to file a class-action lawsuit against Marit for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 Ill. Comp. Stat. 14/1 *et seq*. That lawsuit was filed after Bokor's employment with Marit ended.

Because resolution of Marit's claims involves construction of the 2020 asset purchase agreement, this court ruled in 2025 that EStyle had to be joined as a necessary party. *Marit II*, 2025 WL 2025 WL 2765126, at *3–4. For that reason, the September 29, 2025, order did not reach Bokor's arguments for dismissing the second amended complaint on the merits. *Id.* at *5.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint rather than the case's merits or the merits of any affirmative defense. *See Richard v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012). Rule 8(a)(2) requires every complaint, and every

other pleading that states a claim for relief, to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

To withstand a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. When testing a complaint's sufficiency, the court accepts the complaint's well-pleaded facts as true and draws reasonable inferences from those facts in the plaintiff's favor, but conclusory allegations that merely recite the elements of a claim do not enjoy a presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. ANALYSIS

Now that EStyle has been joined and the second amended complaint is on file, Bokor renews many of the arguments he made when he moved to dismiss Marit's first amended complaint. The court analyzes each count in turn.

### A. Replevin and Conversion Claims

Bokor's arguments for dismissing Marit's replevin and conversion claims partially overlap, as do the torts themselves. To state a claim for conversion under Illinois law, a plaintiff must plausibly allege the following elements: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Arkeyo LLC v. Saggezza, Inc.*, 183 F.4th 936, 944 (7th Cir. 2026) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998); other citation omitted). In Illinois, "replevin is purely a statutory proceeding." *Longo Realty v.*

*Menard, Inc.*, 2016 IL App (1st) 151231 ¶ 41 (citing *Gunn v. Sobucki*, 837 N.E.2d 865, 871 (Ill. 2005)); *see* 735 Ill. Comp. Stat. 5/19-101 *et seq*.

The Illinois replevin statute provides: "Whenever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 Ill. Comp. Stat. 5/19-101(a). As construed by Illinois courts, "[t]he primary purpose of the replevin statute is to test the right of possession of personal property. Where . . . a plaintiff is successful on its claim to possession but the defendant fails to return the property, section 19–120 provides that the plaintiff is 'entitled to judgment for the value thereof or his or her interest therein, and such damages as he or she has sustained by reason of the wrongful taking and detention.'" *Sensational Four, Inc. v. Tri-Par Die & Mold Corp.*, 2016 IL App (2d) 150468 ¶ 28 (citation modified).

**1. Replevin Claim: Statutory Pleading Requirements**

Bokor first cites 735 Ill. Comp. Stat. 5/19-104, which sets out the procedural requirements a state-court complaint must meet to plead a replevin claim. *See* Mot. Dismiss 2–3. Marit's second amended complaint does not meet those requirements. For example, the statute requires a "verified complaint which describes the property to be replevied and states that the plaintiff in such action is the owner of the property so described, or that he or she is then lawfully entitled to the possession thereof." 735 Ill. Comp. Stat. 5/19-104.

The Supreme Court considered a similar state law pleading requirement earlier this year in *Berk v. Choy*, 607 U.S. 187 (2026). Delaware required a medical malpractice complaint to be accompanied by an affidavit of merit signed by a medical professional. *Id.* at 190 (citing Del. Code, Tit. 18, §§ 6853(a)(1), (c) (2025)). The Court held that the substantive law inquiry under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), was unnecessary when an on-point federal rule controlled. *Berk*, 607 U.S. at 191–92; *see Hanna v. Plumer*, 380 U.S. 460, 469–74 (1965). The Rules of Decision Act, 28 U.S.C. § 1652, gives way to a valid federal rfle adopted under the

Rules Enabling Act, 28 U.S.C. § 2072. Thus, the court asks whether a federal rule answers the disputed question and, if so, whether the federal rule is valid. *Berk*, 607 U.S. at 192. The Court held that Rule 8 displaced Delaware's affidavit requirement. *Id.* at 193–99. Unless the federal rules provide otherwise, "Rule 8 sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." *Id.* at 194. Rule 8 is valid under the Rules Enabling Act because it regulates procedure. *Id.* at 198–99.

As in *Berk*, the Illinois replevin statute requires more of a pleader than does Rule 8(a)(2) by mandating a verified complaint containing specified allegations, including a description of the property at issue. 735 Ill. Comp. Stat. 5/19-104. Rule 8 imposes no verification requirement, and its "short and plain statement" standard requires enough detail about the property at issue to give the defendant fair notice of the claim and the grounds on which it rests.[1] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, as in *Berk*, Rule 8 supplants section 19-104 to the extent the statute requires a plaintiff to exceed the federal pleading standard. *See Harrison v. City of Chicago*, 2022 WL 1523621, at *1–2 (N.D. Ill. May 12, 2022).

The parties joust over whether and how Federal Rules of Civil Procedure 64 and 11(a) affect the analysis. Rule 64 lists replevin as a remedy available throughout the pendency of a civil action, except to the extent a federal statute governs. The court does not read the relief requested in the second amended complaint as seeking possession before judgment. Marit has not sought such a remedy in the more than two years in which this case has been on file. *See* Second Am. Compl. p. 24 (relief requested). Thus, Rule 64 has no work to do here.

Rule 11(a) provides in part: "Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit." Bokor argues that Rule 11(a) incorporates the Illinois replevin statute, which he contends explicitly states that a verified complaint is required. The Supreme Court did not settle the scope of the Rule 11(a) sentence at issue here in *Berk*, though it provided guidance. *See Berk*, 607 U.S. at 197–98. The Court

[1] *Cf.* Fed. R. Civ. P. 23.1, which requires a verified complaint to bring a derivative action.

rejected incorporation of the Delaware affidavit requirement because that law required an affidavit from a third party, whereas Rule 11 governs representations by attorneys and unrepresented parties. *Id.* at 198. The Illinois replevin statute does not specify in so many words who must verify a complaint, and the parties have not briefed that question in any depth.

The Seventh Circuit's decision in *Farzana K. v. Indiana Department of Education*, 473 F.3d 703 (7th Cir. 2007), forecloses Bokor's argument. Quoting Rule 11(a), the Seventh Circuit reversed an order dismissing a complaint because it was not verified in conformity with an Indiana procedural rule, reasoning that Rule 11(a)'s reference to a "statute" means a federal statute. *See id.* at 705. No federal statute required verification, so the Seventh Circuit held that "the district court erred when it dismissed the complaint for failure to comply with a verification requirement that governs only in state court." *Id.* That holding requires rejection of Bokor's Rule 11(a) argument.

Bokor attempts to distinguish *Farzana K.* because the plaintiff's claim there arose under federal law, but he cites no case drawing such a distinction. *See* Reply Supp. Mot. Dismiss Second Am. Compl. 2, Dkt. No. 84. The analysis in *Farzana K.* turns on the construction of Rule 11(a)'s scope, not the nature of the claim. Bokor cites no case reading *Farzana K.* differently. Marit's second amended complaint was not required to be verified.

**2. Specificity of Property Description**

Bokor next argues that the second amended complaint does not describe the property at issue in sufficient detail to satisfy Rule 8(a)(2)'s pleading standard. Mot. Dismiss 3–4, 6. Paragraph 88 of the second amended complaint lists six categories of property Bokor allegedly purloined, such as "Ecoco/Marit-owned computers and laptops, electronic devices, and electronically stored information and files contained on the electronic equipment, including a Dell Inspiron desktop computer, two Samsung tablets, a Lenovo laptop, and an unspecified number of USB data storage devices, together with the data and information contained therein (which included Marit's bank statements, payroll records, check registers, documents relating to

the Paychex system, W-2s, and various legal, financial and real estate documents)." Second Am. Compl. ¶ 88; *see also id.* ¶¶ 40, 95. Bokor faults this description and similar allegations for omitting serial numbers, model years, and other details he claims are necessary to differentiate the property Marit seeks to recover from other computers and equipment. Mot. Dismiss 3–4. He further maintains that the references to "data" and "information" are vague and that the repeated use of phrases such as "including without limitation" does not satisfy the pleading standard.

Bokor compares the second amended complaint's property description with the detailed description in *Blum v. City of Chicago*, 261 N.E.2d 457, 458 & n.* (Ill. App. Ct. 1st Dist. 1970). But *Blum* applied Illinois's fact-pleading standard rather than Rule 8(a)(2)'s less burdensome standard. *See Berk*, 607 U.S. at 192–94. The property description in *Blum* also did not set out serial numbers for the items the plaintiff sought to recover, all of which had been seized by the police. Thus, *Blum* does not support Bokor's argument for requiring serial numbers to be alleged, even under Illinois's fact-pleading standard. *See Blum*, 261 N.E.2d at 458 & n.*. Neither does *Wilson v. M & W Gear*, 442 N.E.2d. 670 (Ill. App. Ct. 3d Dist. 1982), which Bokor also cites. The *Wilson* court explained that a plaintiff can sue in replevin only for property capable of identification and return, and discussed the availability of money damages if the property can no longer be recovered. *See id.* at 671–72. The court did not opine on how detailed a complaint's property description must be.

Applying Rule 8(a)(2) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). The second amended complaint does not describe the computers, data, and other property Marit seeks to recover with the exhaustive precision of a legal property description or a government inventory manifest. *See* Second Am. Compl. ¶ 88. Rule 8 does not demand an exhaustive recital of make, model, serial number, and so on. *See, e.g.*, *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081–82 (D. Colo. 2012) (holding that the complaint adequately identified property and denying a motion to dismiss a conversion claim); *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 751–53 (N.D. Ill. 2012)

(dictum). Indeed, Rule 8 does not require "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Bokor does not contend that he is confused about which property is at issue. In context, the second amended complaint makes the provenance and identity of the property sufficiently clear to permit him to mount a defense and conduct discovery. *See L-3 Commc'ns*, 863 F. Supp. 2d at 1081–82; *Rubloff*, 863 F. Supp. 2d at 751–52; *Gates v. Towery*, 435 F. Supp. 2d 794, 801–02 (N.D. Ill. 2006). The second amended complaint's description of the property at issue therefore meets Rule 8(a)(2)'s pleading standard.

**3. Mootness**

Bokor's final argument reiterates a contention he made in prior motions to dismiss: Marit's replevin and conversion claims are moot to the extent they concern property he has returned. Based on evidence that Bokor had returned certain property to Marit, the court agreed with his mootness contentions in its September 2024 opinion and reiterated that holding in its 2025 opinion. *See Marit II*, 2025 WL 2765126, at *7 (citing *Marit I* 6–9). Nothing has changed, and Marit has provided no sufficient reason to revisit those rulings. To avoid any doubt, the second amended complaint's conversion and replevin claims are dismissed in part as moot on the terms set forth in the September 2024 opinion.

In summary, Marit's replevin claim must be measured against Rule 8's pleading standard. So measured, the second amended complaint states plausible replevin and conversion claims because it gives Bokor fair notice of the property Marit seeks to recover. If disputes arise over whether a particular item is among the property Bokor allegedly took, they should be addressed through discovery. The prior mootness rulings remain in effect.

**B. Breach of Fiduciary Duty**

Marit alleges in Count III that Bokor breached his fiduciary duties to Marit and Ecoco, its predecessor. Second Am. Compl. ¶¶ 102–07. Marit seeks compensatory damages including "all compensation paid to [Bokor] during the period of his breaches and the value of the property that

he stole or otherwise dissipated." *Id.* ¶ 106. To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must plausibly allege "the existence of a fiduciary duty, breach of that duty, and damages proximately resulting from that breach." *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 661 (7th Cir. 2024) (quoting *Autotech Tech. Ltd. v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006)). Bokor has conceded that he owed fiduciary duties to Marit and Ecoco during his employment. *Marit I*, at 9 (citations omitted).

"Employees as well as officers and directors owe a duty of loyalty to their employer." *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 ¶ 69 (citing *Mullaney, Wells & Co. v. Savage*, 402 N.E.2d 574, 578–79 (Ill. 1980)). "It is a fundamental principle of agency law that agents owe fiduciary duties of loyalty to their principals not to (1) actively exploit their positions within the corporation for their own personal benefits; or (2) hinder the ability of the corporation to conduct the business for which it was developed." *Marit I*, at 9–10 (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). "[E]ngaging in self-dealing, misappropriating corporate property, and improperly competing with the company" may constitute breaches of a corporate agent's fiduciary duties. *Id.* at 10 (citing *Foodcomm*, 328 F.3d at 303–04).

Bokor maintains that his alleged consultations with attorney Garfinkel during his employment did not breach his fiduciary duties. *Id.* at 7–8. He also argues that he owed Marit no post-employment fiduciary duties, so his participation in a lawsuit after his employment ended does not state a claim for breach of fiduciary duty. *Id.* at 9–10. Marit responds on the merits but first asserts that the court considered and rejected these arguments in its 2024 order and that Bokor should have moved for reconsideration if he wished to press the arguments he makes in the instant motion. Resp. Opp'n Mot. Dismiss 11, Dkt. No. 81.

Contrary to Marit's position, the court has never resolved Bokor's arguments made in Bokor's motion to dismiss the second amended complaint. True, Bokor's motion to dismiss the original complaint's breach of fiduciary duty claim was denied, but Bokor did not raise the dismissal arguments he makes in the instant motion. *See Marit I*, at 10–11. The court also did not reach several alternative arguments because Bokor predicated them on documents outside the

complaint. *See id.* at 11 (explaining that the documents were neither attached to nor central to the original complaint). As for Marit's suggestion that Bokor should have moved for reconsideration, "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012); *see Marit II*, at *3 (quoting *Ennenga* and permitting a Rule 12(b)(6) challenge to the first amended complaint's replevin claim).

On to the merits of the instant motion. Bokor grounds his arguments in Judge Chang's opinion in *Cary v. Northeast Illinois Regional Commuter Railroad Corp.*, 2021 WL 6091750 (N.D. Ill. Dec. 23, 2021). The plaintiff there brought employment discrimination and retaliation claims against her former employer, commonly known as Metra. *See id.* at *1. Metra counterclaimed for breach of fiduciary duty, alleging that during her employment she forwarded confidential documents to herself and her employment attorney, who eventually filed the lawsuit. *See id.* Judge Chang denied Cary's motion to dismiss the counterclaim because the court lacked sufficient information at the pleading stage about what confidential information she had forwarded. *See id.* at *3–5.

In reaching that decision, however, the court declined to adopt both parties' positions on the scope of an employee's fiduciary duties: "Metra cannot be right about an absolute, blanket rule against sharing confidential records, like employment files, because Illinois law authorizes employees to access at least some of their own personnel file. So employees must be able to share at least some confidential documents with their own legal counsel, without breaching their fiduciary duties." *Id.* at *3. In addition, "[i]f . . . lawfully obtained records [not about the employee] are evidence of the employer's violation of law, then disclosure (within limits . . .) should not qualify as a breach of fiduciary duty, because Illinois common law is only concerned [with] preventing an employee's exploitation of her position for personal gain." *Id.* at *4. That does not give an employee carte blanche as to all of her employer's documents and information. *See id.* (discussing hypotheticals); *Fairweather v. Reed Ill. Corp.*, 2022 WL 2159835, at *3–4

(N.D. Ill. June 15, 2022); *McLaughlin v. Chi. Transit Auth.*, 243 F. Supp. 2d 778, 779–80 (N.D. Ill. 2003).

This court agrees with Judge Chang's bottom line: an employee does not breach her fiduciary duty when she "lawfully obtains records; discloses only those records reasonably necessary to develop a lawsuit; and discloses the records only to [her] attorneys and, later, to the pertinent government agency." *See Cary*, 2021 WL 6091750, at *4. Nothing about a BIPA lawsuit, which is what Bokor ultimately filed, changes that analysis. But as in *Cary*, the second amended complaint does not provide enough specificity about the documents, information, and property Bokor allegedly shared with his attorney to determine whether the disclosures fell within those limits. *See id.* at *4–5; Second Am. Compl. ¶¶ 44, 56, 88. Bokor's motion to dismiss Count III is therefore denied.

**C. Fraud in the Inducement**

The September 2024 order dismissed Marit's fraud in the inducement of contract claim for failure to meet Rule 9(b)'s heightened pleading standard. *Marit I*, at 12–13. Bokor argues that the second amended complaint does not cure those deficiencies. The following principles guide the analysis:

> In Illinois, a fraudulent inducement claim has these elements: "(1) a false statement of material fact; (2) knowledge or belief by [the defendant] that the statement was false; (3) an intention to induce [the plaintiff] to act; (4) reasonable reliance upon the truth of the statement by [the plaintiff]; and (5) damages." *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 865 (7th Cir. 2020) (citing *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287 (Ill. App. Ct. 1st Dist. 2013)) (stating that these elements must ultimately be proven by clear and convincing evidence). A fraudulent inducement claim must be pleaded with the particularity required by Rule 9(b). *E.g.*, *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 722 (N.D. Ill. 2017). Rule 9(b) requires the complaint to set forth "the first paragraph of any newspaper story: 'the who, what, when, where, and how'" of the alleged fraud. *Id.* (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012)). To clear the Rule 9(b) hurdle and adequately allege a fraudulent inducement claim, the "plaintiff must allege 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which

> the misrepresentation was communicated to the plaintiff.'" *Id.* (quoting *United States ex rel. Hanna*, 834 F.3d 775, 779 (7th Cir. 2016)).

*Id.* at 12.

The original complaint did not adequately specify when the alleged fraud occurred or to whom the alleged statements were made, and it summarized the "sum and substance" of key conversations. *Marit I*, at 12–13. The second amended complaint cures many of these defects. *See* Second Am. Compl. ¶¶ 29–34. It pleads the "when": conversations between Bokor and Marit's principal, Aaron Tiram, on September 1–4, 2020. *See id.* ¶ 29. It also alleges that Tiram and Bokor reiterated the substance of those conversations at face-to-face meetings on specified dates, but it does not allege the contents of the later conversations. *See id.* ¶¶ 29, 33. Those allegations do not meet Rule 9(b)'s requirements. Count IV must be dismissed insofar as it relies on the in-person meetings referenced in paragraphs 29 and 33.

Paragraphs 30–33 allege the following regarding the conversations between Tiram and Bokor:

> 30. In the first conversation, Tiram informed Bokor that EStyle had decided not to keep Bokor upon the sale.
>
> 31. In response, Bokor said, in sum and substance, that: he had always been and always would be a loyal employee; he had given up other employment opportunities to remain with Ecoco; and that his father was a close friend of Tiram's and that relationship led Bokor to believe he would remain with Tiram and his business. Bokor then asked Tiram to consider whether there was anything he could do to keep his job.
>
> 32. In the second conversation, approximately one day or so later, Bokor said, in sum and substance, that: during the transition period, Plaintiff would need someone to protect and watch over Plaintiff's business interests and files and records that Tiram and Marit had to retain for tax and other purposes, and that Bokor was loyal to Plaintiff and there was no one other than Bokor whom Tiram and Marit could trust to safeguard their interests during the transition period. Bokor further promised to oversee accounting and other financial matters, as well as Marit's operations, in order to ensure that Tiram's and Marit's interest in the funds being escrowed as a result of the sale to EStyle would be safeguarded, reiterating that Bokor had undivided loyalty to Tiram and his family, and to Marit, just as Tiram had demonstrated his loyalty to Bokor's father and to Bokor's father's family.

> 33. On both occasions, and during the subsequent conversations the next week, Bokor also represented and promised that he could provide more assistance and accurate information regarding any litigation or investigations relating to the employees or any other matter that arose if he remained employed and working in the offices of Ecoco/Marit, where much of the relevant information was readily accessible.

Second Am. Compl. ¶¶ 30–33.

These allegations retain the problematic "sum and substance" qualifier from the original complaint, but they elaborate, albeit not in great depth, on what was said on Marit's fraud theory. Construed in the light most favorable to Marit, the complaint alleges that Bokor knowingly made false promises of loyalty and productivity to induce Marit to continue employing him. *See* Second Am. Compl. ¶¶ 31–34. But with Marit's theory clarified, it has also become clear that the alleged scheme concerns promises of future performance. Promissory fraud—a false statement of intent regarding future conduct rather than present or past facts—"is generally not actionable under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud." *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) (citations omitted). Bokor's promises of loyalty and productivity alleged in paragraphs 29–34 do not identify a misrepresentation apart from an unfulfilled promise, which does not support a promissory fraud claim. *See id.* (affirming dismissal of a promissory fraud claim). For these reasons, the court dismisses Count IV.

**D. Illinois Trade Secrets Act Claim**

Paragraph 119 sets out the crux of Marit's claim under the ITSA:

> Bokor, by stealing and otherwise misappropriating Marit's computers, tablets, USB storage devices, documents and files, all of which contained material valuable to the operation and functioning of the business, including unique customer information and requirements, pricing and price comparison information, and customer history, unique employee information, including employee files, as well as information that was unique and proprietary to Marit, obtained information constituting trade secrets of Marit, including without limitation Marit's proprietary technical data, product formulas, financial data, lists of actual and potential customers and suppliers, and litigation strategy.

Second Am. Compl. ¶ 119.

The court dismissed the original complaint's ITSA claim because Marit did not plausibly allege that it took reasonable steps to maintain the secrecy of the information Bokor allegedly misappropriated. *See Marit I* at 14–15. To qualify as a trade secret under the ITSA, information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 Ill. Comp. Stat. 1065/2(d)(2). In ¶ 121 of the second amended complaint, Marit alleges three measures it employed to satisfy that requirement: secure usernames and passcodes, designation of Bokor "as the only employee with access to the materials," and retention of the information "in secure and locked offices belonging exclusively to Marit." Second Am. Compl. ¶ 121.

Bokor argues that these allegations do not plausibly establish reasonable efforts under the ITSA. Marit responds in four sentences, citing paragraph 121 and asserting its sufficiency without citing any case. *See* Resp. Opp'n Mot. Dismiss 14. The question of ¶ 121's sufficiency to state an ITSA claim is complicated by the allegations that Bokor was "essentially [Marit's] only employee" and the only Marit employee in its Chicago office, with "sole and exclusive access" to its files there. Second Am. Compl. ¶¶ 4, 40, 50. Marit does not allege that it entered into a written contract requiring Bokor or any other employee to maintain the confidentiality of its purported trade secrets, or any other information. Nor does it plead that it had any written or unwritten confidentiality policies, such as an employee handbook. *See id.* ¶ 121. Given this somewhat unusual set of facts, Marit's failure to cite pertinent authority or meaningfully develop its argument concerning reasonable efforts constitutes waiver. "[P]erfunctory and undeveloped arguments" and arguments unsupported by pertinent authority are waived. *White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021) (citing *United States v. Elst*, 579 F.3d 740, 747

(7th Cir. 2009)); *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024). Count V is dismissed.

**E. Declaratory Judgment Claim**

Count VI invokes the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and asks the court to declare that the assets at issue in this action "belong exclusively to Plaintiff." Second Am. Compl. ¶¶ 124–31; *see id.* Prayer for Relief ¶ 5.

To determine whether an actual controversy exists for purposes of awarding declaratory relief, *see* § 2201, the court asks whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant [the issuance of a declaratory judgment.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). To show a real and immediate controversy, Marit alleges that Bokor contends that the assets at issue belong to EStyle or that EStyle could assert rights to them. Second Am. Compl. ¶ 128. EStyle admits that Bokor so alleges; admits, on information and belief, that an actual, justiciable controversy exists between Marit and Bokor over ownership; and admits, on the same basis, that a declaratory judgment is necessary as between them. EStyle's Answer ¶¶ 125–26, 128, 131, Dkt. No. 68. EStyle also admits that it has not, to this point, made a formal "claim" to the assets, but it denies Marit's allegation that it "asserts no claim to the assets at issue" by its words and actions. *Id.* ¶ 129. That position is consistent with this court's earlier conclusion that EStyle claims an interest in the subject of this action. *Marit II*, 2025 WL 2765126, at *5–7. Thus, there exists an actual controversy for purposes of awarding declaratory relief.

As Bokor points out, the Declaratory Judgment Act uses discretionary language, providing that a court "may declare" the rights of interested parties. 28 U.S.C. § 2201(a). Accordingly, "[d]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject

matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Bokor asks the court to exercise that discretion to decline to hear Count VI and defer to an action EStyle brought against Marit in the District of Delaware. *See* Mot. Dismiss 14–15 (citing *Wilton*, 515 U.S. at 282).

The abstention authorities on which Bokor relies involved parallel proceedings in state, not federal, court. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) (observing that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties"); *Wilton*, 515 U.S. at 289–90 (declining to "delineate the outer boundaries" of federal courts' discretion in "cases raising issues of federal law or cases in which there are no parallel state proceedings"). The Delaware action is not a state court proceeding. As for parallel suits in federal district courts, "no precise rule has evolved, [but] the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Under Seventh Circuit law, a suit may be dismissed "whenever it is duplicative of a parallel action already pending in another federal court," and it is generally duplicative if its "claims, parties, and available relief do not significantly differ between the two actions." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)). Even then, the court must "consider any special factors counseling for or against the exercise of jurisdiction." *Id.* at 224 (quoting *Calvert Fire Ins. Co. v. Am. Mut. Reins. Co.*, 600 F.2d 1228, 1234 (7th Cir. 1979)).

The Seventh Circuit has identified the following pertinent factors: "whether the declaratory suit presents a question distinct from the issues raised in the [other] proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable

relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995) (citations omitted). "[T]he mere pendency of another suit is not enough in itself to refuse a declaration." *Id.* (quoting *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 590 (7th Cir. 1970)). Nor does discretion under the Declaratory Judgment Act depend on whether the other proceeding is parallel; a finding of parallel suits "does not end the inquiry." *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 378–79 (7th Cir. 2010); *see also Brillhart*, 316 U.S. at 495.

Here, the Delaware action is not duplicative in the relevant sense because the parties and the relief sought differ materially. According to the Delaware case's docket sheet, Bokor has not been named as a party; the parties include EStyle, Marit, as well as others affiliated with Marit. Compl. 1, *EStyle Corp., LLC v. Marit, LLC*, No. 23-cv-1393 (D. Del. Dec. 6, 2023). As far as this court can tell from the docket, Bokor has not sought leave to intervene. As he describes it, the Delaware complaint alleges that Marit misrepresented information to EStyle and caused it to overpay by $50 million when it bought most of Marit's assets in 2020. *See id.* at 5–6; Mot. Dismiss 15. Both cases will likely require construction of the Asset Purchase Agreement. But without Bokor as a party, the Delaware action will not settle the question presented here: whether the specific assets identified in paragraph 88 of the second amended complaint belong to Marit as against Bokor, who allegedly took them, and as against EStyle, which Bokor says may claim them.

Indeed, a judgment in the Delaware action likely would not bind Bokor because "[i]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). A person who was not a party to a suit "generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Id.* at 892; *see also id.* at 893–95 (discussing exceptions). Staying or dismissing Count VI

in favor of the Delaware action would therefore delay this case, possibly for years, for no apparent purpose. This case has remained at the pleading stage for a considerable time.

The purpose of the Declaratory Judgment Act "is to facilitate efficient outcomes." *Hellman*, 610 F.3d at 381. A single ruling in an action to which Marit, Bokor, and EStyle are all parties will resolve ownership of the specific assets as to those parties. *Cf. id.* at 381–82 (holding it an abuse of discretion to stay a declaratory action where the question was "sufficiently distinct" from the issues in the other proceedings and "the value of having a single ruling" was "so great").

Finally, Bokor argues that Count VI "adds nothing of substance" to Counts I through V because those claims require the court to decide which assets Marit owned. Mot. Dismiss 15. Count VI is not redundant. Counts I through V seek relief from Bokor. Only Count VI seeks a declaration binding on EStyle, the entity whose potential claim to the assets required its joinder.[2] *Cf.* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). Bokor's request to dismiss or stay Count VI is denied.

## IV. CONCLUSION

For the reasons stated, defendant William S. Bokor's motion to dismiss the second amended complaint, Dkt. No. 76, is granted in part and denied in part. Counts IV and V, for fraud in the inducement and violation of the Illinois Trade Secrets Act, respectively, are dismissed. The replevin and conversion claims in Counts I and II are dismissed in part as moot to the extent, and on the terms, set forth in the order dated September 24, 2024. The motion is otherwise denied, including as to Counts III and VI. Within fourteen days (by and including

[2] The cases Bokor cites for the contrary proposition do not support his position. He identifies *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742 (6th Cir. 1992) (per curiam), as a Seventh Circuit case and cites it for the proposition that declaratory claims should be dismissed when they add nothing of substance beyond other causes of action. Mot. Dismiss 15. *Hoover* is a Sixth Circuit decision concerning securities and RICO claims, including limitations and Rule 9(b) issues; it does not discuss declaratory relief. *See Hoover*, 958 F.2d at 744–45.

October 30, 2026), the parties are instructed to file a joint initial status report and report of their Federal Rule of Civil Procedure 26(f) discovery planning conference.

Date: October 16, 2026

/s/ Joan B. Gottschall
United States District Judge